IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re: )
)
GURU PROPERTIES, LLC, ) Case No. 11-10101
) Chapter 11
)
Debtor. *Jagmohan* )

AFFIDAVIT OF ~~JAGOHAN~~ DHILLON IN SUPPORT OF FIRST DAY MOTIONS

STATE OF TEXAS )
) SS:
COUNTY OF Collin )

Jagohan Dhillon, being first duly sworn, states:

1. That I am the Attorney in Fact for Lakhwinder Guru, Manager of Guru Properties, LLC ("GURU"). I am familiar with GURU's day-to-day operations, business affairs, books and records, and have been authorized by GURU to submit this Affidavit.

2. On January 12, 2011, GURU filed a Voluntary Petition with this Court for Relief under Chapter 11 of the Bankruptcy Code.

3. To minimize the adverse impact of filing for Chapter 11 protection, and to enhance its prospect of successful reorganization, GURU will file a number of motions requesting various types of "first day" relief (collectively the "First Day Motions"). I am familiar with the content of each First Day Motion and believe the relief sought in each is (i) necessary to enable GURU to operate in Chapter 11 with minimum disruption; (ii) critical to GURU's achievement of a successful reorganization; and (iii) best serves GURU's estate and its creditors' interests.

4. All statements set forth in this Affidavit are based upon: (i) my personal knowledge, (ii) information supplied to me by other members of GURU's management or other

professionals, (iii) my review of relevant documents, or (iv) my opinion based upon my experience and knowledge of GURU's operations and financial condition.

## OVERVIEW OF GURU'S BUSINESS OPERATIONS

5. GURU is a limited liability company organized and existing under the laws of the State of Oklahoma.

6. GURU is a hotel company that owns the Chisholm Hotel in Duncan, Oklahoma.

7. GURU has filed for Chapter 11 Bankruptcy protection as a result of the dramatically declining hotel industry and the accompanying result of decreased cash flow.

## FACTS SUPPORTING DEBTORS' FIRST DAY MOTIONS

8. GURU has submitted a number of First Day Motions concurrent with the filing of GURU's Petition. I assert that these First Day Motions are vital to the successful reorganization of GURU.

**A.   Motion for Order Authorizing Employment of Phillips Murrah P.C. as Attorneys for Debtor and Debtor in Possession.**

9. GURU believes it is necessary to hire counsel and has authorized the retention of Phillips Murrah P.C. ("Phillips Murrah") as its counsel as both debtor and debtor in possession in this bankruptcy action.

10. GURU seeks to employ Phillips Murrah because of the firm's considerable experience in bankruptcy and other areas of commercial law. I feel that the use of counsel with this experience and expertise will be cost effective and beneficial to the bankruptcy estate.

11. GURU has agreed to compensate Phillips Murrah at its regular hourly rates, plus actual and necessary expenses, subject to this Court's approval. Phillips Murrah has received payment of $15,000 for fees and expenses incurred in advising GURU and preparing the filing of its Chapter 11 Petition and First Day Motions, in addition to work it previously provided GURU.

12. It is essential for GURU's reorganization to employ Phillips Murrah as its counsel as both debtor and debtor in possession.

**B. Motion for Order Authorizing Continued Use of Existing Bank Accounts, Checks and Business Forms.**

13. GURU currently maintains bank accounts with Arvest Bank. Through these accounts, its credit card transactions are processed.

14. The United States Trustee Guidelines for debtors in possession typically require that all prepetition bank accounts be closed and that, concurrently, new postpetition bank accounts be opened.

15. GURU would request, however, that this requirement be waived as all parties in interest will be best served by avoiding the disruption and delay that would be caused by the closing of current bank accounts and the opening of new ones.

16. GURU would also request that it not be required to open a new account for the purpose of paying taxes as such obligations can be paid most efficiently out of existing bank accounts and the U.S. Trustee can adequately monitor the flow of funds into, among and out of these accounts.

17. GURU, furthermore, would request that it be allowed to continue using its existing business forms and checks with the addition of a stamped notation of the debtor in possession status rather than replace all business forms and checks. This would reduce the expense incurred by GURU's estate and increased its ability to effectively reorganize.

**C.      Motion for Order Authorizing Debtor to Honor Prepetition Obligations to Employees.**

18.     GURU currently employs 12 employees. The retention and maintenance of these employees is vital necessary for the continuation of Debtor's business. For this reason, GURU proposes to pay its employee payroll and benefit obligations for the prepetition period.

19.     GURU estimates that it owes approximately $8,000.00 in outstanding wage obligations. GURU's failure to remit these amounts would inflict serious damage to morale and the ability of GURU to retain critical staff.

20.     To prevent immediate deterioration in the value of the Bankruptcy estate arising from employee dissatisfaction and departure, and to minimize financial hardship to GURU's employees, GURU respectfully requests that it be authorized to satisfy its prepetition payroll and employee benefit obligations to the extent requested herein.

21.     Furthermore, GURU requests that, to the extent of funds on deposit, all applicable banks be directed to receive, process, honor and pay all checks presented for payment and to honor all funds transfer requests made by GURU relating to the payment of payroll or employee benefit obligations, whether or not such checks were presented or funds transfer requests were submitted prior to, or subsequent to, the petition date. Further, GURU requests authority to issue postpetition checks, or affect postpetition transfer requests, in replacement of any checks or funds transfer requests with respect to its prepetition payroll or employee benefit obligations dishonored or denied as a consequence of the commencement of this case.

**D.     Motion for Interim and Final Orders (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service (II) Deeming Utility Companies Adequately Assured and (III) Establishing Procedures for Determining the Same Pursuant to § 366 of the Bankruptcy Code.**

22.     In the normal course of its business, GURU uses water, electric, telephone, waste and other services provided by various utility companies. These utility companies are as follows: (a) City of Duncan; (b) Duncan Public Utilities Authority; (c) Public Services company of Oklahoma; (d) AT&T; and (e) Cable One.

23.     Continued and uninterrupted provision of utility services is vital to the continued functioning of GURU's operations. Without these services, GURU will suffer severe damage and the value of the bankruptcy estate will deteriorate.

24.     I understand that the Bankruptcy Code prohibits utility companies from altering, refusing, or discontinuing service to, or discriminating against, GURU solely based on the commencement of this Chapter 11 case or the existence of pre-petition debts owed by it. However, I understand that this prohibition only extends for a thirty (30) day period absent adequate assurance of future payment for postpetition utility obligations.

25.     Accordingly, GURU would ask the court to enter an order (i) prohibiting prepetition utility providers from altering, refusing or discontinuing service relationship or terms on account of prepetition invoices, (ii) authorizing payment of ordinary course amounts due for services postpetition to utility companies plus deposits in amounts equivalent to half of the previous month's average charges and deeming utility companies adequately assured, and (iii) establishing procedures for determining requests for additional adequate assurance.

26.     GURU submits that the deposits outlined above constitute sufficient adequate assurance to these utility companies. However, if any such company believes additional

assurance is required, GURU would request that the Court establish the following procedures for making such requests:

    a.    A utility company requesting additional adequate assurance must do so within 20 days of the date of the entry of an Order on this Motion by delivering a written request for additional adequate assurance along with an explanation of why such deposit is insufficient adequate assurance to GURU's counsel. Such request must be actually received by GURU's counsel within 20 days of the date of the Order granting this Motion.

    b.    GURU may, without further Order of this Court, enter into an agreement granting additional adequate assurance with any utility company serving a timely request if GURU, in its discretion, determines the request to be reasonable.

    c.    If GURU determines such request to be unreasonable, GURU shall file a motion for determination of adequate assurance of payment and set such motion for hearing. The utility company seeking adequate assurance shall be deemed to have adequate assurance of payment until the Court makes a determination at the hearing and such utility company may not alter, refuse or discontinue service until the Court makes such determination.

**E.    Emergency Motion for Approval of Payment of Prepetition Sales and Other Taxes.**

27.    Under the law of Oklahoma, GURU is required to collect from its customers sales taxes and to report and remit such taxes to the relevant tax authorities. GURU is further required by federal law to withhold certain taxes from its employees' wages.

28.    In each case, GURU collects such taxes as an agent of the taxing authority which they must hold for the benefit of the same.

29.    A failure to report and remit these taxes can subject GURU to substantial interest and penalties as well as potential criminal charges.

30.    GURU has been required to collect such taxes for prepetition periods which have not yet been required to be paid.

31.    It is my understanding that, pursuant to the Bankruptcy Code, GURU is prohibited from paying these taxes without prior approval of the Court.

32.  Failure to pay these taxes will result in severe irreparable damage to GURU in the form of penalties, interests, and potential criminal action.

33.  Accordingly, GURU would ask the court to enter an order allowing the payment of these prepetition taxes, including penalties and interest, as are due and owing.

DATED this 12th day of January, 2011.



Jagmohan ~~Jagohan~~ Dhillon, Attorney in Fact for Lakhwinder Guru

Subscribed and sworn before me this 12th day of January, 2011.

NOTARY PUBLIC

(SEAL)

My Commission Number: 12847502-3

My Commission Expires: 12/20/2014

LIZET GARCIA
My Commission Expires
December 20, 2014

7